556 S.E.2d 106

## LAWYER DISCIPLINARY BOARD, Complainant,

v.

## David M. ANSELL, Respondent.

### No. 27950.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 2, 2001.

Decided Nov. 9, 2001.

Lawrence J. Lewis, Esq., Morgan Palmer Griffith, Esq., Office of Disciplinary Counsel, Charleston, West Virginia, Attorneys for Complainant.

David M. Ansell, Esq., Pro Se.

PER CURIAM:

This matter is before this Court for review of the findings and sanctions recommended by a Hearing Panel Subcommittee ("the HPS") of the Lawyer Disciplinary Board ("the Board") concerning the respondent, David M. Ansell, a member of the West Virginia State Bar.

On June 30, 2000, the Investigative Panel of the Board charged Mr. Ansell with violating Rules 8.4(c) and 8.4(d) [1] of the *West Virginia Rules of Professional Conduct.*

Following a hearing, the HPS determined that Mr. Ansell had violated Rules 8.4(c) and 8.4(d) and recommended to this Court: (1) that Mr. Ansell be suspended from the practice of law for 60 days; (2) that he complete 12 hours of continuing legal education (CLE) classes; and (3) that he be required to pay the costs of these proceedings.

Mr. Ansell stipulated to the HPS's findings of fact and conclusions of law, but he challenges the recommended 60–day suspension of his law license.

I.

In early December 1998, after completing the court-appointed representation of an indigent criminal defendant in Putnam County, attorney David Ansell submitted a payment voucher (proposed order with supporting documentation) to Circuit Court Judge O.C. Spaulding for approval as provided for in *W.Va.Code,* 29–21–13a [1997]. On December 9, 1998, Judge Spaulding signed the order approving payment for Mr. Ansell's services. On February 11, 1999, based on Judge Spaulding's order, the West Virginia Public Defender Services ("PDS") paid Mr. Ansell for his services.

In the interim, Mr. Ansell inadvertently submitted a second payment voucher to Judge Spaulding for the same indigent criminal defendant's representation. Judge Spaulding signed a second order on February 4, 1999, approving a second payment for services that were essentially the same as those covered by the prior December 9, 1998, order.

Upon realizing his error in "double-billing," Mr. Ansell retrieved the second set of the voucher documents and at least two certified copies of the February 4, 1999 order from the Putnam County circuit clerk's office. Mr. Ansell did not submit the second order for payment to the PDS and was not paid a second time for his services. [2]

Sometime thereafter, Mr. Ansell used the certified copies of the February 4, 1999 court order in an attempt to obtain attorney fees from the PDS for his services in two other court-appointed criminal cases. Specifically, Mr. Ansell altered the certified copies of the February 4, 1999 order by crossing out and changing the name of the defendant, the criminal action number, and the amount of money approved, but reserving the Judge's signature. He then submitted these altered orders to the PDS. Mr. Ansell subsequently contended that he took this action to speed up the receipt of payment for his services. [3]

The PDS returned both orders to Mr. Ansell, requesting that Mr. Ansell "make any necessary corrections and return the correct-

---

1. *West Virginia Rules of Professional Conduct* Rule 8.4 [1995] states in pertinent part:

   It is professional misconduct for a lawyer to:

   . . . .

   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice;

2. Mr. Ansell is not charged with double billing because he only received one payment for each of the representations involved.

3. This Court takes note of the historical long delays at the PDS in paying court-appointed attorneys. Attorneys are regularly forced to wait months for payment by the PDS. ·

ed voucher[s] as soon as possible. . . . be[ing] sure to initial any changes made to the Order Approving Payment." Mr. Ansell initialed changes on the orders, and returned the orders to the PDS. On April 5, 1999, seeking additional clarification, the PDS again returned the orders to Mr. Ansell.

Mr. Ansell then properly submitted new vouchers for the two indigent criminal defendants to Judge Spaulding for approval. Judge Spaulding approved Mr. Ansell's request for payment. Mr. Ansell did not advise Judge Spaulding that he had previously attempted to obtain payment with altered orders. The PDS eventually paid Mr. Ansell for his services.

Ultimately, the Cabell County Public Defender Office discovered Mr. Ansell's actions, and filed a complaint with the Board.

## II.

■ We apply a *de novo* standard of review when considering a lawyer disciplinary matter.

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syllabus Point 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

*West Virginia Rules of Lawyer Disciplinary Procedure* Rule 3.7 provides that, "[i]n order to recommend the imposition of discipline of any lawyer, the allegations of the

formal charge must be proved by clear and convincing evidence."

■ In addition, we have held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee of Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985).

■ In disciplining an attorney, this Court "must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, in part, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). With the foregoing standards in mind, we examine the charges against Mr. Ansell and the HPS's recommendations.

■ We agree with the HPS's findings and recommended sanctions. Mr. Ansell altered two copies of an order that Judge Spaulding had signed. Then he submitted the altered orders to the PDS requesting payment. In doing so, Mr. Ansell clearly violated Rule 8.4(c) by engaging in conduct that was less than fully honest. Additionally, by improperly altering court orders, by submitting altered orders, by attempting to circumvent correct procedures, and by attempting to avoid proper judicial review of his vouchers,[4] Mr. Ansell violated Rule 8.4(d) of the *West Virginia Rules of Professional Conduct* by engaging in conduct that is prejudicial to the administration of justice.

The altering of a court's order is a serious offense. And under most circumstances such an act would likely call for a much harsher penalty than the one recommended in this case.[5] But this is Mr. Ansell's first

---

**4.** Judge Spaulding did not actually see the altered orders; therefore, he never approved the vouchers as required by *W.Va.Code*, 29–21–13a [1997].

**5.** We recognize that while this is Mr. Ansell's "first offense," it is a grave offense. In other

circumstances, such behavior might result in disbarment. The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") recommends disbarment when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepre-

offense and we, therefore, consider his prior unblemished record as a mitigating factor.[6] In addition, testimony offered before the HPS indicated that Mr. Ansell was struggling financially in his law practice and had overextended himself by attempting to manage some outside businesses. Furthermore, Mr. Ansell did not seek or obtain any financial gain by double payment or overpayment.

### III.

Accordingly, we concur with the recommendations of the Lawyer Disciplinary Board's Hearing Panel Subcommittee and impose the following sanctions: (1) David M. Ansell is suspended from the practice of law for 60 days; (2) Mr. Ansell shall attend 12 hours of continuing legal education in ethics within the next reporting period;[7] and (3) Mr. Ansell shall pay all costs incurred in this proceeding within 1 year from the date of the issuance of this order.

60–Day Suspension, Education, and Costs.

sentation that seriously adversely reflects on the lawyer's fitness to practice.... Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." *Matter of Fioramonti*, 176 Ariz. 182, 859 P.2d 1315, 1321 (1993).

The improper altering of a court's order is a particularly serious offense because "[t]he accuracy of documents and instruments utilized before a tribunal in proceeding is of utmost importance to the administration of justice." *Matter of Siegel*, 708 N.E.2d 869, 872 (Ind.1999).

6. In a case decided under Article VI of the former *Bylaws of the West Virginia State Bar*, in Syllabus Point 2, *Committee on Legal Ethics of*

*The West Virginia State Bar v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976), *overruled on other grounds by Committee on Legal Ethics v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993), we held that:

> In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform system of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

7. The 12 hours of continuing legal education in ethics may be part of the requirements of Chapter VII of the *West Virginia State Bar Rules and Regulations*, paragraph 5.2 [1997].