IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 16-1003

_____

FILED

March 15, 2018

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

BENJAMIN F. WHITE, a member of the West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding
Nos. 15-03-283, 15-03-285, 15-03-288

ANNULMENT AND COSTS

_____

Submitted: February 6, 2018
Filed: March 15, 2018

Renee N. Frymyer, Esq.                    Benjamin F. White, Esq.
Office of Disciplinary Counsel             Chapmanville, West Virginia
Charleston, West Virginia                  Respondent
Counsel for the Petitioner

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus Point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.      "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."  Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

4.     "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:  'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'"  Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5.     "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."  Syllabus Point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6.     "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the

ii

practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus Point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7.  "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.  "A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee." Syllabus Point 7, *Lawyer Disciplinary Board v. Grafton*, 227 W. Va. 579, 712 S.E.2d 488 (2011).

WALKER, Justice:

Benjamin F. White is a lawyer who convinced A.S.[1] to hire him as counsel after A.S. was charged with one count of felony child neglect in April 2015. Mr. White never discussed (or documented) his fee arrangement with A.S., but immediately pursued an intimate relationship with her. Mr. White took A.S. on out-of-town trips, during which he provided her with alcohol and drugs — causing her to violate the terms of her probation — and engaged in sexual relations with her. A.S. eventually reported Mr. White's conduct and he was promptly removed as her counsel in June 2015. Mr. White was charged with violating six separate provisions of the West Virginia Rules of Professional Conduct, but he failed to respond to the formal statement of charges. Following a hearing at which both Mr. White and A.S. testified, the Hearing Panel Subcommittee (HPS) of the Lawyer Disciplinary Board (LDB) recommended that Mr. White be suspended from the practice of law for five years. Upon consideration of Mr. White's egregious conduct, including the additional aggravating factor that Mr. White disregarded this Court's order to file a responsive brief, we order that his license be annulled.

---

[1] Because of the sensitive nature of the facts alleged in this case, initials are used herein for Mr. White's client. *See* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. White is a lawyer practicing in Chapmanville, West Virginia who was admitted to the West Virginia State Bar on November 2, 2005. Mr. White was previously reprimanded in 2014. Additionally, Mr. White's license was administratively suspended on November 13, 2017 for nonpayment of dues and noncompliance with the financial responsibility disclosure requirement, but was reinstated on February 2, 2018 after complying with both. The current proceeding arises from three lawyer ethics complaints filed against Mr. White in July 2015—all stemming from allegations of misconduct in relation to his representation of A.S. in a felony criminal matter.[2]

### A. *Underlying Facts and Allegations*

In October 2014, Mr. White sent A.S. a Facebook friend request and began sending her messages through that social media platform. Throughout early 2015, though Mr. White and A.S. communicated online occasionally about her ongoing divorce proceeding, she testified that she did not consider him to be her attorney. The nature of their relationship changed, however, on April 22, 2015, when A.S. was charged with one felony count of gross child neglect. A.S. was appointed representation, but after speaking

---

[2] The first complaint was filed on July 1, 2015, by Judge Miki Thompson, Circuit Court Judge for the Thirtieth Judicial Circuit of West Virginia (I.D. No. 15-03-283). The second complaint was filed on July 6, 2015, by Teresa C. McCune, Chief Public Defender for the Thirtieth Judicial Circuit of West Virginia, who served as appointed counsel for A.S. in the associated criminal case (I.D. No. 15-03-285). The final complaint was filed on July 8, 2015, by A.S., Mr. White's client in the associated criminal case (I.D. No. 15-03-288).

with Mr. White—who advised her that court appointed attorneys "were not as good as [him]"—she requested that the public defender be removed as counsel. Although Mr. White and A.S. did not reduce his representation to a formal written agreement or set his rate of pay, Mr. White filed a Notice of Appearance on May 19, 2015.

After representation began, Mr. White came to A.S.'s residence unannounced on several occasions. Though A.S. acknowledges that they had a friendship beyond the usual attorney-client relationship, she testified that she felt that he was "pushy and bullish" during this time. Because Mr. White never asked for payment for his services, A.S. testified that she felt obligated to be friendly with him and that she didn't feel like she could turn down his requests, specifically testifying that she felt that "if she quit having anything to do with him, then he wasn't going to be [her] lawyer anymore."

At her plea hearing on May 28, 2015, A.S.'s home confinement was suspended and she was placed on probation. Immediately afterward, Mr. White insisted that they drive to Charleston to "celebrate." Once in Charleston, Mr. White took A.S. to dinner and purchased alcoholic drinks for her, despite knowing that her consumption of those drinks would violate her probation. On their way home, in the early morning hours of May 29, 2015, Mr. White took her to the ATV resort he owns and they engaged in sexual relations for the first time.

The following week, Mr. White and A.S. traveled together again when she accompanied him to Louisville, Kentucky for an ATV convention. Mr. White told her not to mention to anyone at the convention that he was her lawyer. On the way to Louisville, Mr. White gave A.S. an entire bottle of Xanax. In addition to ingesting a number of those pills, she consumed alcohol that was also provided by Mr. White and the two again engaged in sexual relations.

After the Louisville trip, Mr. White threatened to "put [A.S.] in jail" for one year for leaving her required alternative sentencing program classes early, despite her having permission to do so. On one such occasion, Mr. White came to the location where A.S. attended classes and began questioning other workers as to her whereabouts. One of the workers told Mr. White that A.S. left in a gold Suburban and Mr. White asked a friend on the police department to stop the automobile in an attempt to find her. When Mr. White and A.S. next spoke, A.S. told Mr. White that she was upset that he had involved the police because she could have been arrested. According to A.S.'s testimony, Mr. White responded, "that would have been good for [her]" and "that's what [she] need[s]." A.S. testified that after this encounter she was paranoid that he would try to "set her up." Notwithstanding this concern, Mr. White and A.S. ultimately reconciled and were on "good terms for a week." During this time, Mr. White and A.S. again traveled to Charleston and engaged in sexual relations. Once more, Mr. White purchased alcohol for A.S. while she was still on probation.

During this time, Mr. White continued serving as A.S.'s lawyer by filing various motions.[3] A.S. testified that she believed Mr. White filed motions relating to her plea solely to remain involved with her case. Mr. White also gave A.S.'s children gifts during his representation and paid to have her cell phone fixed.

On June 22, 2015, A.S. told A.S.'s community service manager, Ms. Maynard, about Mr. White's behavior. Ms. Maynard accompanied A.S. to Judge Thompson's office, where A.S. requested a new lawyer. On June 24, 2015, Mr. White was removed as counsel and Theresa McCune was appointed to represent her. A.S.'s probation was ultimately revoked due to a failed drug screen and she was sentenced to jail as a result. A.S. testified that the situation with Mr. White was very stressful and embarrassing, and had occurred at a very vulnerable time in her life. She cited her "downfall" as the prescription Xanax Mr. White had provided to her.

### B. Charges by the Lawyer Disciplinary Board

Upon review of the three complaints filed against Mr. White, the Investigative Panel of the LDB filed a formal Statement of Charges on October 26, 2016, alleging that Mr. White violated the following Rules of Professional Conduct: Rule

---

[3] Mr. White filed a Motion to Reduce Probation Fees on June 16, 2015. On June 18, 2015, Mr. White filed a Motion to Amend Language of Plea and Sentencing Order and a Motion to Withdraw Felony Plea.

1.7(a)(2) (conflict of interest; current clients),[4] Rule 1.8(e) (conflict of interest/prohibition

on providing financial assistance to a client),[5] Rule 1.8(j) (conflict of interest/prohibition

on sexual relations with a client),[6] Rule 4.2 (prohibition on communication with persons

---

[4] Rule 1.7(a)(2) provides:

> [e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (2) there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer.

[5] Rule 1.8(e) provides:

> [a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

[6] Rule 1.8(j) provides:

> [a] lawyer shall not have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual relationship existed between them at the commencement of the lawyer/client relationship. For purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of the lawyer for the purposes of arousing or gratifying the sexual desire of either party or as a means of abuse.

represented by counsel),[7] Rule 1.5(b) (requiring communication of scope of representation, fees, and expenses),[8] and Rule 8.4(d) (misconduct).[9]  Further, the LDB listed—as an aggravating factor—a prior disciplinary offense, which resulted in this Court issuing a reprimand  for Mr. White's violation of Rules 1.15(b)  and (c) (safekeeping property).

The Statement of Charges was served upon Mr. White on November 10, 2016,[10] when he appeared for the Scheduling Conference.  He verbally agreed to accept

---

[7] Rule 4.2 provides:

> [i]n  representing  a  client,  a  lawyer  shall  not communicate about the subject of representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

[8] Rule 1.5(b) provides:

> [t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate.  Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

[9] Rule 8.4 provides "[i]t is professional misconduct for a lawyer to:…(d) engage in conduct that is prejudicial to the administration of justice."

[10] The Clerk previously attempted service of process upon Mr. White by certified mail on or about October 27, 2016, but the correspondence was returned on or about December 14, 2016, marked unclaimed.

service as of that date.  But, Mr. White failed to respond to these formal charges as required by Rule of Lawyer Disciplinary Procedure (RLDP) 2.12.[11]  Accordingly, the Office of Disciplinary Counsel (ODC) filed a Motion to Deem Admitted the Factual Allegations in the Statement of Charges.  The ODC also filed a Motion to Exclude Testimony of Witnesses and Documentary Evidence or Testimony of Mitigating Factors because Mr. White failed to provide his discovery to the ODC as he was obligated to do under RLDP 3.4.[12]  These motions were granted by the HPS at the April 17, 2017 prehearing.

### C.    *HPS Report and Recommended Sanctions*

This matter proceeded to hearing before the HPS in Charleston on April 24, 2017, at which the HPS heard testimony from A.S. and from Mr. White.  As a result of the

---

[11] Rule 2.12 provides, in part: "[responsive] pleadings shall be filed by the respondent with the Clerk of the Supreme Court of Appeals and the Office of Disciplinary Counsel not more than thirty days after service of the formal charges."

[12] Rule 3.4, in relevant part, provides:

> Within 30 days after receiving Disciplinary Counsel's mandatory discovery, the respondent shall provide the Office of Disciplinary Counsel with the complete identity, address and telephone number of any person with knowledge about the facts of any of the charges; provide a list of the proposed witnesses to be called at the hearing, including their addresses, telephone numbers, and a summary of their anticipated testimony; provide a disclosure of any trial expert pursuant to the requirements of Rule 26(b)(4) of the West Virginia Rules of Civil Procedure; provide inspection and copying of the results of any reports of physical or mental examinations or scientific tests or experiments; and provide a list and copy of any proposed exhibit to be used at the hearing.

HPS's ruling to deem the factual allegations in the statement of charges admitted, in conjunction with it considering the evidence presented, the HPS found that Mr. White violated Rules of Professional Conduct 1.7(a)(2), 1.8(e), 1.8(j), 1.5(b), and 8.4(d). The HPS further found that there were no mitigating factors present, but found several aggravating factors, including past discipline by this Court and the vulnerability of the victim in this matter. As to sanctions, the HPS recommended that Mr. White's law license be suspended for a period of five years and that he be required to pay the costs of the proceedings.

On September 13, 2017, the ODC filed its consent to the recommendation of the HPS. This Court, however, did not concur with the recommendation of the HPS and on October 18, 2017, ordered this matter to be scheduled for oral argument under Rule 19 of the West Virginia Rules of Appellate Procedure.

Although this Court directed the ODC and Mr. White to brief the matter pursuant to the scheduling order, Mr. White did not file a responsive brief. On January 8, 2018, the ODC filed a motion urging this Court to consider Mr. White's failure to file a responsive brief in accordance with this Court's scheduling order as an additional aggravating factor. The ODC now requests that we enhance Mr. White's sanction from the five-year suspension recommended by the HPS to annulment of his license to practice law.

9

## II.  STANDARD OF REVIEW

We review lawyer disciplinary proceedings using the following standards:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.[13]

While we respectfully consider the HPS's recommendations on the appropriate sanctions, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."[14]  Keeping these standards in mind, we proceed to consider the arguments before the Court.

## III.  DISCUSSION

We have consistently held that in lawyer disciplinary matters, the ODC has the burden "to prove the allegations of the formal charge by clear and convincing

---

[13] Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

[14] Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

evidence."[15]  In contrast to most cases we review, Mr. White failed to respond to the charges against him and the HPS ruled that the factual allegations in the Statement of Charges were deemed admitted by Mr. White.  We find no basis to disturb the underlying determination by the HPS that Mr. White violated five separate provisions of the Rules of Professional Conduct.

As such, we need only consider the appropriate sanctions for Mr. White's egregious conduct.  In doing so, we are mindful of our underlying obligation to weigh the multiple considerations in this matter:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.[16]

With these principles in mind, we turn to the factors to be considered in imposing sanctions as set forth in Rule 3.16 of the RLDP.  We begin with our holding in *Office of Disciplinary Counsel v. Jordan*:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:  "In imposing a sanction after a finding of lawyer misconduct, unless otherwise

---

[15] Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995).

[16] Syl. Pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

11

provided in these rules, the Court [West Virginia Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.[17]

In applying the first *Jordan* factor, the HPS found—and we agree— that Mr. White violated several duties owed to his client, to the public, and to the legal profession. As a defendant in a felony criminal matter, A.S. was in a particularly vulnerable situation and relied on Mr. White to protect her liberty. Mr. White's decision to pursue a personal relationship with such a vulnerable client reflects adversely on his character and fitness to practice law for a number of reasons.

First, by initiating an intimate and sexual relationship with A.S. after becoming counsel of record in her criminal matter, Mr. White's ability to exercise independent judgment and render her with independent advice became impaired. Second, Mr. White—by inviting A.S. to accompany him on an overnight trip and purchasing alcoholic drinks for her and providing her with prescription Xanax while she was on supervised probation— directly assisted A.S. in violating the terms of her court ordered probation, falling far short of his fiduciary role in the matter. Third, Mr. White never

---

[17] Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

12

confirmed the scope of his representation, nor did he provide the basis or rate of fees and expenses in writing. This resulted in A.S. feeling indebted to Mr. White and afraid to terminate the attorney-client relationship for fear of retribution.

More broadly, Mr. White's reprehensible conduct fell short of the duties owed to the public and to the legal profession. As officers of the court, lawyers are required to act in a manner to maintain the integrity of the Bar.[18] It is abundantly clear that the actions Mr. White took with respect to his representation of A.S. were directly contrary to this obligation.

Turning to the second *Jordan* factor, we examine Mr. White's mental state at the time of his misconduct to determine whether he acted knowingly, intentionally, or negligently. The undisputed facts are that Mr. White intentionally and knowingly started and maintained a sexual relationship with a client in a very vulnerable situation, provided her with alcohol and drugs while he knew she was serving probation, and did not communicate with her regarding his fees or the scope of his representation. Mr. White's culpable mental state is further evidenced by his repeated requests that A.S. keep their attorney-client relationship a secret—instructing her not tell any of his friends that he was her attorney. A.S. testified that Mr. White demanded secrecy on this matter "because he

---

[18] *See Lawyer Disciplinary Bd. v. Stanton*, 225 W. Va. 671, 678, 695 S.E.2d 901, 908 (2010).

could get in trouble."

Applying the third *Jordan* factor—injury or potential injury caused—it is clear that Mr. White's involvement with A.S. caused her real injury. A.S. served jail time for violating her probation due to positive drug screens. She attributed part of her decision to "use" again to the Xanax Mr. White provided her, as well as the stress caused by her relationship with him—specifically his threats to have her imprisoned for things he had witnessed during the course of their relationship. When Mr. White provided A.S. with drugs and alcohol, he was aware that the requirements of her probation included mandatory drug tests. And he knew of her past battles with addiction. This repugnant behavior is not befitting of an attorney and Mr. White should have been aware of the injury likely to result.

In considering the fourth *Jordan* factor—aggravating or mitigating factors— we have explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."[19] We have consistently described mitigating factors as follows:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free

---

[19] Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

14

disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.[20]

By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or facts that may justify an increase in the degree of discipline to be imposed."[21] As we very recently noted, "there is no 'magic formula' for this Court to determine how to weigh the host of mitigating and aggravating circumstances to arrive at an appropriate sanction; each case presents different circumstances that must be weighed against the nature and gravity of the lawyer's misconduct."[22]

We agree with the HPS that there are no mitigating factors in this matter and, as such, Mr. White should not receive the benefit of any considerations that may justify a reduction in the degree of discipline to be imposed. We also agree with the HPS that there are multiple aggravating factors present—the first being Mr. White's prior disciplinary offense from 2014 as indicated by Rule 9.22(A) of the ABA Model Standards for Imposing Lawyer Sanctions. As punishment for Mr. White's violation of Rules 1.15(b) and (c)

---

[20] *Id.*, Syl. Pt. 3.

[21] *Id.*, Syl. Pt. 4.

[22] *Lawyer Disciplinary Bd. v. Sirk*, __W. Va.__, __S.E.2d__, 2018 WL 944266, at *8 (February 15, 2018).

(safekeeping property), this Court issued a reprimand and ordered Mr. White to take an additional six hours of Continuing Legal Education and to pay the costs of the disciplinary proceeding.

A second aggravating factor stems from the vulnerability of Mr. White's client—an individual charged with gross child neglect and who has a history of drug and alcohol abuse. Mr. White used A.S.'s vulnerability first to obtain her as a client by convincing her that her court-appointed attorney would not provide adequate representation in a felony case involving her children. Then—after initiating a sexual relationship with A.S.—Mr. White preyed upon this same vulnerability both by employing tactics to ensure A.S. felt indebted to him and threatening A.S. with criminal charges based upon information obtained by and through the attorney-client relationship.

Finally, Mr. White's behavior during the pendency of his disciplinary proceedings must be considered as an additional aggravating factor. The HPS initially recommended to this Court that Mr. White's license be suspended for five years in addition to other sanctions. Subsequently, Mr. White engaged in additional misconduct by ignoring the directive of this Court to file a responsive brief. The ODC argues that his law license should now be annulled as a result.

Based solely on Mr. White's conduct during his representation of A.S., there

16

is ample precedent to support the five-year suspension initially recommended by the HPS. For example, in *Lawyer Disciplinary Board v. Stanton*,[23] we imposed a three-year suspension as a result of a lawyer pursuing and conducting a personal relationship with a vulnerable client. And this Court has previously ordered discipline where a lawyer provides his or her client with gifts or financial assistance similar to those provided in this case.[24] Mr. White's conduct is even more egregious than that of the attorneys in those cases because he not only pursued a relationship with his client and used his position of power to his advantage, but he also provided alcohol and prescription drugs to a client with a known drug problem while she was on probation.

Moreover, Mr. White ignored this Court's scheduling order and failed to file a responsive brief in this matter. This behavior further evinces a disturbing pattern of misconduct that merits a more substantial punishment. This Court has held that

> [a] person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that

---

[23] 233 W. Va. 639, 760 S.E.2d 453 (2014).

[24] *Lawyer Disciplinary Bd. v. Nessel*, 234 W. Va. 695, 769 S.E.2d 484 (2015) (lawyer who made small gifts to litigation clients with a humanitarian motive reprimanded, supervised for a year, assessed costs, and ordered to attend an additional nine hours of continuing legal education in the area of ethics and law office management).

17

justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee.[25]

Absent extenuating circumstances, we question whether a respondent attorney who disregards the directives of this Court and altogether fails to advocate for himself—to maintain his career—will adequately advocate for his or her clients. Accordingly, we conclude that a respondent attorney's violation of this Court's scheduling order will be deemed an aggravating factor and may give rise to heightened discipline.

We find that Mr. White's egregious violations of the standards of the legal profession, combined with his outright unwillingness to comply with the directives of this Court, are sufficient to merit the most severe sanction available and hereby order that his license be annulled.

## IV. CONCLUSION

Based upon the foregoing, we impose the following sanctions pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure: (1) annul Mr. White's law license; and (2) order that Mr. White will pay the costs of these proceedings.

Annulment and Costs.

---

[25] Syl. Pt. 7, *Lawyer Disciplinary Bd v. Grafton*, 227 W. Va. 579, 712 S.E.2d 488 (2011).