IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 16-1210

_____

FILED

**March 15, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

RONALD D. HASSAN, a member of the West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding
No. 16-05-080

SUSPENSION AND COSTS

_____

Submitted: January 15, 2019
Filed: March 15, 2019

Jessica H. Donahue Rhodes, Esq.
Office of Disciplinary Counsel
Charleston, West Virginia
Petitioner

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD is disqualified.

SYLLABUS BY THE COURT

1. "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus Point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions, or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

4. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, or the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the

practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus Point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

WALKER, Chief Justice:

Ronald D. Hassan is a lawyer who admittedly engaged in "value billing" and "block billing" to calculate the amounts owed to him by the Public Defender Services (PDS) for his court-appointed representation of criminal defendants. Mr. Hassan's billing practices resulted in impractical absurdities such as billing thirty or more hours on multiple days. He was charged with violating two separate provisions of the West Virginia Rules of Professional Conduct.[1] Following a hearing, the Hearing Panel Subcommittee (HPS) recommended that Mr. Hassan be suspended from the practice of law for one-and-one-half years. Mr. Hassan objected to the recommended sanctions and argued that he should instead be subjected merely to a three-month suspension. We find that the HPS's recommendation of a one-and-one-half year suspension is overly harsh, but that Mr. Hassan's proposed sanction of three months is inadequate to fully effectuate the goals of the disciplinary process. Accordingly, we modify the HPS's recommendation and order that Mr. Hassan be suspended from the practice of law for six months, and we adopt the remainder of the HPS's recommended sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Hassan is a lawyer practicing in Welch, West Virginia who was admitted to the West Virginia State Bar on November 5, 1985. The current proceeding arises from

---

[1] The Amended Rules of Professional Conduct became effective January 1, 2015. Because Mr. Hassan's misconduct occurred before that date, the prior version of the Rules of Professional Conduct are applicable here.

a lawyer ethics complaint filed against Mr. Hassan in February 2016 containing allegations of misconduct in relation to billing issues with the PDS.

### A.   *Underlying Facts and Allegations*

In June 2015, Mr. Hassan contacted the Office of Disciplinary Counsel (ODC) about billing issues he was having with the PDS and requested an opinion as to whether he needed to self-report his value and block billing practices.  Although the ODC advised Mr. Hassan to self-report, he informed them that he would seek an outside opinion.

On September 23, 2015, Mr. Hassan entered into a conciliation agreement with the PDS that detailed the extent of Mr. Hassan's billing discrepancies, including billing (1) thirty or more hours on three dates;[2] (2) twenty-four to thirty hours on four dates;[3] (3) twenty to twenty-four hours on eleven dates;[4] and (4) fifteen to twenty hours on

---

[2] Mr. Hassan billed 37.0 hours on November 8, 2013; 30.0 hours on January 14, 2014; and 31.5 hours on June 30, 2014.

[3] Mr. Hassan billed 24.5 hours on October 24, 2013; 24.5 hours on December 4, 2013; 24.5 hours on September 25, 2014; and 28.5 hours on June 26, 2014.

[4] Mr. Hassan billed 22.0 hours on July 8, 2013; 20.0 hours on October 28, 2013; 21.0 hours on November 12, 2013; 20.5 hours on November 13, 2013; 20.5 hours on December 13, 2013; 20.0 hours on February 20, 2014; 22.5 hours on February 20, 2014; 21.0 hours on March 20, 2014; 21.5 hours on March 12, 2014; 21.5 hours on July 9, 2014; and 22.0 hours on July 15, 2014.

twenty-six dates.[5]

The conciliation agreement further described Mr. Hassan's billing practices. He disclosed that although he recorded time for each particular matter, he billed in increments of .5 hours—regardless of actual time spent—and did not have a system for accumulating the daily total of time. The agreement notes that Mr. Hassan explained that he had been billing in this manner over a course of years without ever being told it was improper, had always gained the approval of the circuit court without ever being questioned, and was unaware that PDS had published guidelines regarding the method for billing services.

To resolve the matter, the PDS and Mr. Hassan agreed that he would reduce the vouchers held by PDS for payment by one-half of the total amount of each voucher. The total amount of the reduction was $9,880.17.

---

[5] Mr. Hassan billed 16.5 hours on September 23, 2013; 18.5 hours on September 26, 2013; 16.5 hours on September 30, 2013; 15.0 hours on October 15, 2013; 17.5 hours on October 16, 2013; 16.0 hours on November 7, 2013; 19.0 hours on November 14, 2013; 16.5 hours on December 10, 2013; 15.5 hours on January 7, 2014; 17.5 hours on January 8, 2014; 18.0 hours on January 9, 2014; 17.0 hours on January 16, 2014; 16.0 hours on January 23, 2014; 17.5 hours on January 27, 2014; 19.5 hours on January 28, 2014; 19.5 hours on February 2, 2015; 16.0 hours on February 4, 2014; 18.5 hours on February 5, 2014; 16.8 hours on February 28, 2014; 18.5 hours on March 14, 2014; 15.5 hours on March 21, 2014; 17.5 hours on April 24, 2014; 16.0 hours on July 29, 2014; 15.5 hours on August 14, 2014; 15.0 hours on November 6, 2014; 17.5 hours on November 7, 2014; and 17.5 hours on January 29, 2015.

On February 19, 2016, the ODC obtained a copy of the conciliation agreement. Then, on February 24, 2016, the ODC filed a complaint against Mr. Hassan regarding this overbilling. In Mr. Hassan's March 31, 2016 response, he reiterated the points made in the conciliation agreement regarding voucher approval and his apparent misunderstanding of the illegality of value billing and unawareness of PDS billing guidelines. On the other hand, Mr. Hassan acknowledged that West Virginia Code § 29-21-13a(g) (2018) provides that "[v]ouchers submitted under this section shall specifically set forth the nature of the service rendered, the stage of proceeding or type of hearing involved, the date and place the service was rendered and the amount of time expended in each instance" and that "[a]ll time claimed on the vouchers shall be itemized to the nearest tenth of an hour."

Mr. Hassan asserted that he did not itemize his billing to the tenth of an hour because he "block billed" activities for individual clients in half-hour increments, rather than breaking out multiple activities for a single client on a single day. Even so, Mr. Hassan did not and does not dispute the accuracy of PDS's billing records and that he failed to bill in conformity with the statute. He stipulated to a violation of Rules 8.4(c) and (d) of the Rules of Professional Conduct, but contended that his billing errors were unintentional and denied that his conduct involved dishonesty, fraud, or deceit.

On June 28, 2016, Dana F. Eddy, Esq., Executive Director of the PDS, provided reports generated from PDS's online voucher system regarding Mr. Hassan. Mr.

Eddy noted that "systematic billing in increments of one-half hour or one hour does not reflect the actual time involved with a task and expressly contravenes the statutory directive regarding billing to the nearest tenth of an hour." In addition to detailing the specific billing reports mentioned above, this report also showed how Mr. Hassan spent his time for the seven days in which he billed more than twenty-four hours.[6]

### B.    *Charges by the Lawyer Disciplinary Board*

Upon review of the complaint filed by the ODC, the Investigatory Panel of the Lawyer Disciplinary Board (LDB) filed a formal statement of charges on December 27, 2016, alleging that Mr. Hassan violated the following Rules of Professional Conduct:

---

[6]On June 30, 2014, Mr. Hassan billed 2.5 hours of waiting in court, 1.5 hours of hearing in court, and 22 hours of out-of-court time. On October 24, 2013, Mr. Hassan billed 1.5 hours of waiting in court, 11 hours of hearing in court, and 12 hours of out-of-court time. On November 8, 2013, Mr. Hassan billed 6 hours of waiting in court, 6 hours of hearing in court or plea/arraignment, and 25 hours of out-of-court time. On December 4, 2013, Mr. Hassan billed .5 hours of waiting in court, 2 hours of hearing in court, and 22 hours of out-of-court time. On September 25, 2014, Mr. Hassan billed 8 hours of hearing in court and 16.5 hours of out-of-court time. On January 14, 2014, Mr. Hassan billed 2 hours of waiting in court, 8 hours of hearing in court, and 20 hours of out-of-court time. On June 26, 2014, Mr. Hassan billed 3 hours of waiting in court, 12 hours of hearing in court, and 13.5 hours of out-of-court time.

Rule 1.5 (fees);[7] Rule 8.4(b) (misconduct);[8] Rule 8.4(c) (misconduct);[9] and Rule 8.4(d) (misconduct).[10]

The Statement of Charges was served upon Mr. Hassan on January 11, 2017,

---

[7] The applicable version of Rule 1.5(a) provides:

(a) [a] lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.

[8] The applicable version of Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[9] The applicable version of Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[10] The applicable version of Rule 8.4(d) provides that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice."

6

and the matter was set for hearing on March 2, 2017. It was later continued to September 28 and 29, 2017.

### C. *HPS Report and Recommended Sanctions*

This matter proceeded to hearing before the HPS in Charleston on September 28, 2017, at which the HPS heard testimony from Mr. Eddy; Sydney Bell, Esq.; the Honorable Judge Rudolph J. Murensky; and Mr. Hassan.

The HPS found that the evidence established—and Mr. Hassan stipulated to—violations of Rules 8.4(c) and 8.4(d) of the Rules of Professional Conduct. As to sanctions, the HPS recommended that Mr. Hassan's law license be suspended for one year and six months and that he be required to complete an additional six hours of CLE in ethics and pay the costs of the proceedings before petitioning for reinstatement with this Court.

The ODC consented to the recommendation of the HPS; however, on May 9, 2018, Mr. Hassan filed his objection to the recommended sanctions. On May 11, 2018, this Court ordered this matter to be scheduled for oral argument under Rule 19 of the West Virginia Rules of Appellate Procedure.

## II. STANDARD OF REVIEW

We review lawyer disciplinary proceedings using the following dual standards:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgement. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.[11]

While we respectfully consider the HPS's recommendations on the appropriate sanctions, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."[12] Keeping these standards in mind, we proceed to consider the arguments before the Court.

## III. DISCUSSION

This Court has consistently held that in lawyer disciplinary matters, the ODC has the burden "to prove the allegations of the formal charge by clear and convincing evidence."[13] In this case, Mr. Hassan stipulated to having violated Rule 8.4(c) and Rule

---

[11] Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

[12] Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

[13] Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995).

8.4(d) of the Rules of Professional Conduct, and we, therefore, find no basis to disturb the HPS's determination that these rules were violated. So, we need only consider the proportionality of the punishment in determining the appropriate sanctions for Mr. Hassan's conduct. In doing so, we are mindful of our underlying obligation to weigh the multiple considerations in this matter:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.[14]

With these principles in mind, we turn to the factors to be considered in imposing sanctions as set forth in Rule 3.16 of the Rules of Lawyer Disciplinary Procedure (RLDP). As we explained in *Office of Disciplinary Counsel v. Jordan*:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct;

---

[14] Syl. Pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

9

and (4) the existence of any aggravating or mitigating factors.[15]

In applying the first *Jordan* factor, the HPS found—and we agree—that Mr. Hassan violated several duties owed to his client, to the public, and to the legal profession. Because criminal clients are sometimes required to reimburse the state for fees paid to appointed counsel, the HPS concluded that Mr. Hassan violated duties owed to his clients by the possibility of these inaccurate vouchers being transposed to them.

More broadly, Mr. Hassan's billing practices fell short of the duties owed to the public and to the legal profession. As officers of the court, lawyers are required to act in a manner that maintains the integrity of the Bar.[16] By filing false vouchers with the PDS, the general public's expectation that a lawyer shall exhibit the highest standards of honesty and integrity was not met. Because the submissions made by Mr. Hassan were untrue and incorrect, public money was used to pay for Mr. Hassan's overbilling. And, as we stated in *Lawyer Disciplinary Board v. Cooke*, "[t]his Court considers the protection of the public and the State coffers of paramount importance, particularly as pertains to lawyer

---

[15] Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

[16] *See Lawyer Disciplinary Bd. v. Stanton*, 225 W. Va. 671, 678, 695 S.E.2d 901, 908 (2010).

disciplinary matters."[17]

Turning to the second *Jordan* factor, we examine Mr. Hassan's mental state at the time of his misconduct to determine whether he acted knowingly, intentionally, or negligently. The HPS concluded that Mr. Hassan acted intentionally. We agree. Mr. Hassan knew that he was billing his time in either one hour or one-half hour increments, regardless of how much time he actually worked. These were not accidental instances of misplaced decimals or mistaken notations. Rather, Mr. Hassan admitted that he regularly engaged in "value billing" and "block billing."

Applying the third *Jordan* factor—injury or potential injury caused—as previously stated, we agree with the HPS that there has been clear injury to the taxpayers of West Virginia and potential injury to any criminal defendant ordered to reimburse legal fees.

In considering the fourth *Jordan* factor—aggravating or mitigating factors— we have explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."[18] We have consistently described mitigating factors as follows:

---

[17]239 W. Va. 40, 55, 799 S.E.2d 117, 132 (2017).

[18] Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

11

Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.[19]

By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or facts that may justify an increase in the degree of discipline to be imposed."[20] As we have previously noted, "there is no 'magic formula' for this Court to determine how to weigh the host of mitigating and aggravating circumstances to arrive at an appropriate sanction; each case presents different circumstances that must be weighed against the nature and gravity of the lawyer's misconduct."[21]

The HPS found that there were four mitigating factors in this matter—the first being Mr. Hassan's lack of disciplinary history. Second, Mr. Hassan has expressed remorse. While we recognize that Mr. Hassan has been remorseful, we are concerned by

---

[19] *Id.*, Syl. Pt. 3.

[20] *Id.*, Syl. Pt. 4.

[21] *Lawyer Disciplinary Bd. v. Sirk*, 240 W. Va. 274, 282, 810 S.E.2d 276, 284 (2018).

his testimony regarding his inability to make money on court-appointed criminal defendants as it appears to be an attempt to rationalize the inaccurate billing.[22] Third, based upon testimony throughout the underlying proceedings, it is evident that Mr. Hassan is of good character and maintains a solid reputation in his local community.

Finally, although the HPS found Mr. Hassan's prompt entry into a conciliation agreement to be a mitigating factor, we decline to do so. Although the conciliation agreement resulted in a 50% reduction of his pending vouchers and the completion of the rest of his criminal cases on a pro bono basis, this amounts to compelled restitution. Mr. Hassan said as much during the hearing when he informed the HPS that he agreed to the reduction in vouchers "because that's what [he] needed to do to get [Dana Eddy] to sign the conciliation agreement and settle the issue."

We agree with the HPS that there are two aggravating factors present—the first being Mr. Hassan's substantial experience in the practice of law. A second aggravating factor stems from the financial benefit Mr. Hassan received while engaging in

---

[22] "I can't make any money. I'll lose money doing it. For example, Dana Eddy has told me and other people that I can't charge a half an hour to send a form letter. It's too much. It should take me a tenth of an hour, six minutes. Okay. And, by the law, I can't bill at the $45 an hour attorney rate. I have to bill at the secretary's paralegal rate, which has a maximum amount, a maximum limit of $20 per hour. So if I pay my secretary, if I pay my secretary $10 an hour, I could only charge a tenth of an hour—that's $1—to write a form letter. I have to pay her. I have to pay her payroll rate. She's using my equipment, my inkjet printer, my paper, my copier. And I have to put postage on that letter. I can't make any money."

the underlying misconduct.

We next consider the appropriate sanctions in this case. Relying on this Court's recent decision in *Lawyer Disciplinary Board v. Cooke*,[23] the HPS determined that Mr. Hassan's misconduct warranted a suspension of his law license for a duration of one year and six months.[24] Like Mr. Hassan, Mr. Cooke engaged in "value over billing" and later entered into a conciliation agreement.[25] Mr. Cooke billed more than fifteen hours a day on thirty-seven different days and submitted more than five days of twenty hours of billable time.[26] And of those five days, two of the days included billing for over twenty-four hours.[27] Here, Mr. Hassan billed more days at higher hours than Mr. Cooke, but for a more concentrated period of time. Mr. Hassan billed more than twenty hours on eighteen separate days—on seven of those days, he billed for more than twenty-four hours and on three of those days, he billed for more than thirty hours.

There are, however, several stark differences between this case and *Cooke*. Although Mr. Hassan faces only one charge of misconduct, Mr. Cooke faced two additional

---

[23] 239 W. Va. 40, 799 S.E.2d 117 (2017).

[24] *Id.*, 239 W. Va. at 56, 799 S.E.2d at 133.

[25] *Id.*, 239 W. Va. at 50, 799 S.E.2d at 127.

[26] *Id.*, 239 W. Va. at 49–50, 799 S.E.2d at 126–27.

[27] *Id.*, 239 W. Va. at 50, 799 S.E.2d at 127.

14

charges—one of which involved his failure to timely file a guardian ad litem brief in an abuse and neglect case and the other stemmed from his failure to communicate and refund retainer fees.[28] Similarly, while Mr. Hassan has accepted full responsibility for his actions and promptly arrived at an agreement with PDS, Mr. Cooke significantly delayed the process and attempted to shift blame—first to his staff and then by deceptively invoking a medical condition (low testosterone) as a rationale for having not timely made proper filings with this Court and the ODC.[29]

Further, unlike in this case, Mr. Cooke appeared to be billing the same travel time to multiple matters, billing multiple entries of the same activity and amount of time on multiple matters, and outright duplicate billing of activities on the same file.[30] Additionally, unlike the limited length of time of inaccurate billing in this case, PDS was concerned with the cumulative amount of time Mr. Cooke was billing to PDS annually for multiple years, which was also of particular concern to this Court. [31]

Mr. Hassan points to our prior holding in *Lawyer Disciplinary Board v.*

---

[28] *Id.*, 239 W. Va. at 47, 799 S.E.2d at 124.

[29] *Id.*, 239 W. Va. at 50, 799 S.E.2d at 127.

[30] *Id.*, 239 W. Va. at 44, 799 S.E.2d at 121.

[31] *Id.*

*Ansell.*[32] In that case, Mr. Ansell intentionally altered court orders relative to court-appointed voucher payments[33] and, as a result, was found to have violated Rule 8.4(c).[34] But because he had no prior disciplinary history and was struggling both financially and with his work-load, this Court imposed a 60-day suspension, twelve hours of CLE, and payment of the costs associated with the proceedings.[35] Unlike Mr. Hassan, however, in *Ansell*, the attorney received no financial gain from his misconduct.[36] Accordingly, imposing a similar 60-day suspension would be inadequate here.

Mr. Hassan's conduct was neither as aggravated as that in *Cooke*, nor as mitigated as that in *Ansell*; therefore, we must craft a punishment proportionate to the underlying conduct. Upon consideration of this Court's precedent, along with the mitigating and aggravating factors present in this case, we find that a suspension of six months is adequate discipline.

## IV. CONCLUSION

For the reasons stated above, we impose the following sanctions according

---

[32] 210 W. Va. 139, 556 S.E.2d 106 (2001).

[33] *Id.*, 210 W. Va. at 142, 556 S.E.2d at 109.

[34] *Id.*

[35] *Id.*

[36] *Id.*, 210 W. Va. at 143, 556 S.E.2d at 110.

16

to Rule 3.15 of the RLDP: (1) suspend Mr. Hassan's law license for six months;[37] (2) order that Mr. Hassan complete an additional six hours of CLE in ethics; and (3) order that Mr. Hassan will pay the costs of these proceedings.

Suspension and Costs.

---

[37] Mr. Hassan is required to comply with the duties of a suspended lawyer as specified in Rule 3.28 of the RLDP.