IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0252

_____

FILED
November 1, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

V.

JOSHUA C. CAIN,
Respondent

_____

Lawyer Disciplinary Proceeding
No. 18-03-527

LAW LICENSE SUSPENDED AND OTHER SANCTIONS IMPOSED

_____

Submitted: September 29, 2021
Filed: November 1, 2021

Rachael L. Fletcher Cipoletti
Chief Lawyer Disciplinary Counsel
Renée N. Frymyer
Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorneys for the Petitioner

Sean T. Logue
Logue Law Group
Carnegie, Pennsylvania
Attorney for the Respondent

CHIEF JUSTICE JENKINS delivered the Opinion of the Court.

JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.

JUDGE AKERS, sitting by temporary assignment.

# SYLLABUS BY THE COURT

1.    "A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ('HPS')] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.    "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law."  Syllabus point 3, *Committee on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.    "Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."  Syllabus point 1, in part, *Lawyer Disciplinary Board v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995).

4. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

5. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the

practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

**Jenkins, Chief Justice:**

This lawyer disciplinary proceeding is before us upon the objection of Respondent Joshua C. Cain, Esq. ("Mr. Cain") to the recommended discipline of the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board ("LDB"), arising from a single disciplinary complaint. Mr. Cain was found to have violated several West Virginia Rules of Professional Conduct because of his overbilling the West Virginia Public Defender Services ("PDS"). The HPS recommended that Mr. Cain be subjected to a 180-day suspension and two-year supervised practice upon reinstatement; remain compliant with a West Virginia Judicial and Lawyer Assistance Program ("WVJLAP") monitoring agreement; and pay all costs of these disciplinary proceedings. The Office of Disciplinary Counsel ("ODC") consented to the recommendation of the HPS. Mr. Cain's sole objection is to the recommended sanction. He argues that he should instead be subjected to only a ninety-day suspension rather than the recommended 180-day suspension.

After a thorough review of the record developed before the HPS, and upon careful consideration of the parties' briefs and oral arguments and the relevant law, this Court agrees that Mr. Cain has violated multiple Rules of Professional Conduct and approves of the recommendations of the HPS. In addition to the recommended sanctions of the HPS, we further order that Mr. Cain must complete six hours of Continuing Legal Education ("CLE") in law practice management over and above the customary requirement.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Cain was admitted to the West Virginia State Bar in April of 2011 and practices in and around Moundsville, West Virginia.[1] Accordingly, he is subject to the disciplinary jurisdiction of this Court and its properly constituted LDB. Below we set out the conduct underlying this disciplinary matter as well as the relevant procedural history.

### A. *Underlying Conduct and Factual Background*

On August 31, 2017, Dana Eddy, Esq. ("Mr. Eddy"), the Executive Director of the PDS, received an email from the Honorable Jeffrey Cramer, Judge of the Second Judicial Circuit, West Virginia, explaining that Mr. Cain had submitted to the Judge eighty-five payment vouchers accompanied by a proposed order approving payment of appointed counsel fees and expenses for each of the vouchers.[2] Judge Cramer noted in the

---

[1] Moundsville, West Virginia, is located in Marshall County, West Virginia.

[2] Mr. Cain's law practice includes court-appointed work in both the First and Second Judicial Circuits of West Virginia. West Virginia Code section 29-21-13a (eff. 2008) provides the statutory scheme that outlines how court-appointed attorneys are to be reimbursed for their time and expenses by the State of West Virginia. Although this statute was amended in 2019, we rely upon the 2008 version that was in effect when Mr. Cain committed his misconduct. Specifically, this statute requires the attorney to "maintain detailed and accurate records of the time expended and expenses incurred on behalf of eligible clients[.]" *Id.* at § 13a(a). Additionally, claims for reimbursement in each case are made through vouchers that are first submitted to the appointing circuit court judge for approval, and are then forwarded to the PDS for review and payment. *Id.* Attorneys are compensated by the PDS for "*actual and necessary* time expended for services performed and expenses incurred[.]" *Id.* at § 13a(d) (emphasis added).

2

correspondence that many of the vouchers concerned matters for which a final disposition had been made eight to ten months before submission of the vouchers. Judge Cramer further explained that upon his inspection of the submitted payment vouchers, he observed additional irregularities. These irregularities included, but were not limited to, the following: (1) many of the vouchers contained unreasonable amounts of time opening, reviewing, and closing files; (2) at least one voucher billed for a hearing that had not occurred; (3) many of the vouchers contained entries where Mr. Cain billed 1.5 hours of travel time to every Marshall County proceeding despite living in Moundsville, which is where the Marshall County Courthouse is located; and (4) many of the vouchers contained copying expenses that were excessive. Judge Cramer requested guidance from the PDS on how to proceed. This correspondence by Judge Cramer prompted an extensive investigation by the PDS into Mr. Cain's billing practices, including traveling to the Marshall County Courthouse to review the vouchers, and ultimately referring the matter to the Commission on Special Investigations.[3]

After a year of investigation, in November of 2018, Mr. Eddy filed a complaint with the LDB regarding Mr. Cain's overbilling practices in five specific areas.

---

[3] The Commission on Special Investigations was originally created by the Legislature in September 1968 as the Purchasing Practices and Procedures Commission. It has continued as a statutory body and is now called the Commission on Special Investigations. Pursuant to West Virginia Code section 4-5-2, the duties and powers of the Commission on Special Investigations include, but are not limited to, investigating matters involving malfeasance, misfeasance or nonfeasance in office by any employee or officer of the state; determining if any criminal or civil statutes have been violated at any level of state government; and determining whether to recommend criminal prosecution or civil

3

The first issue raised concerns over the date of the submission of the payment vouchers. Specifically, West Virginia Code section 29-21-13a (eff. 2008) provides,[4] in relevant part, that payment vouchers "submitted more than ninety calendar days after the last date of service shall be rejected, unless for good cause, the appointing court authorizes in writing an extension[.]" Mr. Eddy advised that several of the vouchers Mr. Cain submitted related to cases for which final disposition had been made at least eight to ten months before submission of the vouchers. Furthermore, it was alleged that Mr. Cain had his payment vouchers returned by Judge Mark Karl, Judge of the Second Judicial Circuit[5] in 2013 for being "excessive," and that, as a result, Mr. Cain purposefully waited until Judge Karl retired before submitting any additional vouchers in Marshall County. Accordingly, Mr. Eddy asserted that Mr. Cain invented a last date of service within the appropriate ninety-day timeframe to "make the voucher appear to be timely submitted."

The next area raised in the complaint concerned the travel billed by Mr. Cain. In particular, Mr. Eddy questioned whether Mr. Cain "billed for travel to and from his Marshall County residence[,] which is closer to the venues involved or for travel to and from [his] 'Cameron' office[.]" Also, while Mr. Cain claimed to maintain an office space

---

action for any violation, either criminal or civil, at any level of state government. *See* W. Va. Code § 4-5-2 (eff. 2013).

[4] *See supra* note 2.

[5] Judge Karl was a Judge of the Second Judicial Circuit until his retirement in 2015.

4

in Cameron, and contended that he billed for travel between Cameron and the Northern Regional Jail or Marshall County Courthouse, an investigator from the Commission on Special Investigations reported that the office space was "in a state of disrepair and shambles," that "no phones or computer equipment [could] be seen," and that "[b]oxes [were] strewn everywhere[.]" According to the complaint, the office space was used for storage, and it was not equipped to be an everyday functional office.

The third matter raised in the complaint related to the amount of time Mr. Cain billed for waiting in court. It was asserted that, "almost exclusively, [Mr.] Cain bills a [0].5 hour for waiting in court." Mr. Cain's explanation for this billing practice was that he always arrived to court half an hour early; however, there is at least one instance in which a Marshall County Courthouse security video showed that Mr. Cain arrived at the time of a hearing but billed thirty minutes for waiting. Aside from issues regarding billing time waiting for court, the fifth issue raised concerns regarding the amount of time Mr. Cain billed for in-court proceedings. Specifically, Mr. Cain billed one hour for a significant number of hearings, and many others were billed in one-hour segments. However, Judge Cramer indicated that most of his hearings did not last anywhere near an hour. Finally, the complaint asserted that there were several other general issues with Mr. Cain's billing practices, including that Mr. Cain engaged in "pattern" billing regarding requesting reimbursement for copies and for time spent making digital backups of his files, and that these are administrative tasks that are not compensable.

Mr. Cain filed a response indicating that Mr. Eddy had "been extremely adversarial with [him] through this process and has waited over a year since [he] submitted [his] bills before filing a complaint, so most if any physical proof [he] would have showing [he] was in [his] office is gone." He further attempted to generally explain his billing practices by asserting that he has

> endeavored to comply with the rules and regulations of the PD[S] office but that is a hard thing to do because there are no rules or regulations, so the best I can do is call on occasion or get back returned vouchers for some error and try to change my procedures to accommodate. On more than one occasion I have been given contradictory information on how to bill for my time.

### B. Statement of Charges by the LDB and Hearing

A Statement of Charges was filed against Mr. Cain in March of 2020 by the Investigative Panel of the LDB, formally charging him with violating several Rules of Professional Conduct.[6] In particular, the Statement of Charges alleged that by engaging in

---

[6] Because the misconduct occurred after 2015, the current version of the West Virginia Rules of Professional Conduct applies to the instant matter. We note that both the ODC and the HPS quote the prior version of only Rule 1.5 in the documents filed in the matter. However, utilizing the language of either version of Rule 1.5, Mr. Cain has violated that Rule under the circumstances of this case.

these billing activities, Mr. Cain violated Rule 3.3,[7] Rule 1.5,[8] Rule 8.4(c),[9] and Rule

8.4(d)[10] of the West Virginia Rules of Professional Conduct.

---

[7] Rule 3.3(a)(1) of the West Virginia Rules of Professional Conduct provides:

> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

[8] Rule 1.5(a) of the West Virginia Rules of Professional Conduct provides:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
> (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

[9] Rule 8.4(c) of the West Virginia Rules of Professional Conduct provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]"

[10] Rule 8.4(d) of the West Virginia Rules of Professional Conduct provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice[.]"

7

In response to the Statement of Charges, Mr. Cain filed an Answer. In his Answer, Mr. Cain admitted that he "avoided submitting the vouchers for approval by either Judge Karl or Judge [David W.] Hummel, [Jr., Judge of the Second Judicial Circuit,] as Judge Karl had already returned the vouchers as excessive." He further admitted that the vouchers he submitted to Judge Cramer were not timely submitted, that he "claimed miles that were not traveled," that his "Cameron office was mostly used as storage space and [was] not a functional everyday office," that he "consistently billed for waiting in court when he did not actually wait in court," that he "billed for 253 hours of 'digital backup' even though this is an administrative task that is not billable," that he billed for a hearing that did not occur, and that he "overbilled for post-sentencing matters, copying, jail visits, travel to the jail facility, hearings, and duplicate travel[.]" Moreover, Mr. Cain contended, for the first time, that he suffers from severe depression and anxiety, and that these mental illnesses "had a substantial impact on his professional actions." He also claimed to suffer from a severe cannabis addiction that impacted his behavior.

The HPS held a telephonic pre-hearing in September of 2020. During the pre-hearing, both parties informed the HPS that they were working with WVJLAP to develop a monitoring agreement for Mr. Cain, which he subsequently entered. The matter then proceeded to a hearing before the HPS on the Statement of Charges in December of 2020 where Mr. Cain testified. The HPS also heard testimony from Amber Hanna, the Program Coordinator for the WVJLAP, regarding Mr. Cain's monitoring agreement; and three character witnesses for Mr. Cain: Samuel White, Carrie Scott, and Terry McDiffitt.

8

During the hearing, the ODC and Mr. Cain submitted joint stipulations regarding findings of fact and conclusions of law, and subsequent to the hearing, the ODC and Mr. Cain submitted joint findings of fact, conclusions of law, and recommended sanctions, to the HPS. These joint stipulations and joint findings of fact, conclusions of law, and recommend sanctions mirrored the previous admissions from Mr. Cain's Answer to the Statement of Charges. In addition, Mr. Cain admitted that his conduct violated Rules 3.3(a)(1), 1.5(a), and 8.4(c) and (d) of the Rules of Professional Conduct and that he acted intentionally and knowingly. The ODC and Mr. Cain agreed that Mr. Cain's law license should be suspended for ninety days, that he be placed on two years of supervised practice, that he be required to remain compliant with the requirements of the WVJLAP monitoring agreement, and that he pay the costs of the proceedings.

### C. HPS Report and Recommended Sanctions

The HPS filed its Report on April 19, 2021. The report made findings and conclusions almost identical to those presented in the joint findings of fact, conclusions of law, and recommended sanctions. However, the HPS deviated from the joint filing as to the sanctions. The HPS concluded that,

> [t]he Hearing Panel agrees with the nonbinding stipulated sanctions except that based on the aforesaid case law, the nature of the violations, and the intent of [Mr. Cain] in committing the violations, this Hearing Panel believes that a suspension of [Mr. Cain]'s law practice for a period of 180 days is more appropriate than 90 days.

9

Accordingly, the HPS recommended the following disposition: (1) that Mr. Cain's law license be immediately suspended for 180 days and that he be ordered to fully comply with Rules 3.28 and 3.32[11] of the Rules of Lawyer Disciplinary Procedure[12] upon reinstatement; (2) that Mr. Cain be placed on two years of supervised practice by an active attorney in good standing with the bar in his geographic area; (3) that Mr. Cain remain compliant with the monitoring agreement he entered into with the WVJLAP; and (4) that Mr. Cain pay the costs of the disciplinary proceedings. The ODC consented to the recommendation of the HPS. However, Mr. Cain filed his objection to the recommended sanctions asserting that a suspension of 180 days "imposes a great hardship on [him] as it mandates a reapplication to The West Virginia State Bar." On May 21, 2021, this Court ordered that this matter be scheduled for oral argument under Rule 19 of the West Virginia Rules of Appellate Procedure. Mr. Cain now asks this Court to impose a ninety-day suspension rather than the 180-day suspension recommended by the HPS.

---

[11] While the HPS stated in its Report that Mr. Cain must comply with Rule 3.31, this must have been a clerical error as that Rule applies to the reinstatement process for a lawyer who has been suspended for a period of three months or less, and therefore, would not be applicable to Mr. Cain. Accordingly, we believe the HPS more accurately intended to cite to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure which applies to lawyers whose license to practice law has been or shall be suspended for a period of more than three months.

[12] Rule 3.28 of the Rules of Lawyer Disciplinary Procedure explains the duties of disbarred or suspended lawyers. Rule 3.32 of the Rules of Lawyer Disciplinary Procedure describes the procedure lawyers whose license to practice law has been or shall be suspended for a period of more than three months must undertake to have their law license reinstated.

## II.

## STANDARD OF REVIEW

When this Court considers a lawyer disciplinary matter,

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS")] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994). Further, while we give respectful consideration to the HPS's recommendations on the appropriate sanctions to impose, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

Finally, to ensure the highest quality of legal services in this State, we also have stated that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys[,] and to safeguard its interest in the administration of justice." *Law. Disc. Bd. v. Taylor*, 192 W. Va. 139, 144, 451 S.E.2d 440, 445 (1994) (per curiam). With these standards in mind, we proceed to consider the arguments before the Court.

11

## DISCUSSION

At the outset, we are mindful that "Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Law. Disc. Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995). In the present matter, Mr. Cain has stipulated to having violated Rule 1.5, Rule 3.3, and Rule 8.4 of the West Virginia Rules of Professional Conduct, and we, therefore, find no basis to disturb the HPS's determination that those Rules were violated. As such, we need only consider the proportionality of the punishment in determining the appropriate sanctions for Mr. Cain's conduct. As discussed above, the HPS recommends a 180-day suspension of Mr. Cain's law license. The ODC fully supports this recommendation. Mr. Cain asks this Court to impose only a ninety-day suspension.

In determining an appropriate sanction, this Court is guided by Syllabus point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted

12

intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Examining the first *Jordan* factor, the HPS found, and we agree, that Mr. Cain violated several duties owed to his clients, the public, to the legal system, and to the profession. Here, Mr. Cain's "billing practices fell short of the duties owed to the public and to the legal profession." *Law. Disc. Bd. v. Hassan*, 241 W. Va. 298, 304, 824 S.E.2d 224, 230 (2019). We concur with the HPS's commentary in its Report that "[l]awyers are officers of the court, and as such, must operate within the bounds of the law and abide by the rules of procedure which govern the administration of justice in our state." "As officers of the court, lawyers are required to act in a manner that maintains the integrity of the bar. By filing false vouchers with the PDS, the general public's expectation that a lawyer shall exhibit the highest standards of honesty and integrity was not met." *Hassan*, 241 W. Va. at 304, 824 S.E.2d at 230 (footnote omitted).

Next, we must consider the second *Jordan* factor by determining whether Mr. Cain acted knowingly, intentionally, or negligently. The HPS concluded that Mr. Cain acted knowingly and intentionally. We agree. Mr. Cain has admitted throughout these proceedings that his conduct was knowing and intentional. We particularly find egregious that Mr. Cain purposefully avoided submitting his payment vouchers until a new judge was on the bench to avoid submitting them to the judge who had previously found them to be excessive and questionable.

13

Turning to the third *Jordan* factor, we must determine if Mr. Cain's conduct caused injury or potential injury. Unlike most other inappropriate billing matters that have recently been before this Court, in this instance, there was, fortunately, no known harm to Mr. Cain's clients and no restitution owed to the PDS because the circuit court never submitted the vouchers at issue for payment. However, we agree with the HPS that under these specific circumstances there was an actual injury because Mr. Cain's conduct forced the PDS to divert its resources to investigate his improper billing practices. Mr. Cain further has admitted in the joint stipulations that generally "[t]here is . . . a substantial impact on the legal profession generated by lawyer overbilling[,]" and that his "noncompliance with these rules as exhibited in the record is clearly detrimental to the legal system and legal profession, and his conduct has brought the legal system and legal profession into disrepute."

Applying the fourth *Jordan* factor, we must consider whether there is any aggravating or mitigating evidence relevant to the issue of what sanction should be imposed. This Court has held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Law. Disc. Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). We further have held that mitigating factors may include any of the following:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional

14

problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *id.* On the other hand, we have explained that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *id.*

The HPS found that there were four mitigating factors in this matter: (1) inexperience in the practice of law, (2) personal or emotional problems, (3) full and free disclosure to the LDB, and (4) remorse. We agree with the HPS's conclusions as to these mitigating factors. However, the HPS found the presence of several aggravating factors in this case, and we agree with those findings as well. Most significantly, the HPS found that Mr. Cain had a dishonest or selfish motive in his overbilling PDS. Additionally, on December 8, 2017, the Investigative Panel admonished Mr. Cain for violating Rule 1.4 and Rule 1.3 of the West Virginia Rules of Professional Conduct. As this Court previously has explained, an Investigative Panel admonishment is "aggravating just like any other disciplinary action." *Law. Disc. Bd. v. Sturm*, 237 W. Va. 115, 128, 785 S.E.2d 821, 834 (2016).

15

Regrettably, in recent years, this Court has had the opportunity to examine the issue of attorneys overbilling the PDS in several instances. "While no two lawyer disciplinary matters ever present the exact same circumstances, we nonetheless endeavor to impose similar discipline for similar misconduct." *Law. Disc. Bd. v. Grindo*, 243 W. Va. 130, 141, 842 S.E.2d 683, 694 (2020). Accordingly, we must consider our previous cases regarding overbilling as a guide in determining the appropriate sanctions in this current matter.

In *Lawyer Disciplinary Board v. Cooke*, 239 W. Va. 40, 799 S.E.2d 117 (2017), this Court had occasion to consider an attorney who overbilled the PDS, among other misconduct. For example, Mr. Cooke billed more than fifteen hours a day on thirty-seven days and submitted five days of more than twenty hours of billable time. *Id.* at 49-50, 799 S.E.2d at 126-27. This conduct spanned a multi-year period. *Id.* Mr. Cooke ultimately was sanctioned with a two-year suspension of his law license, one-year of supervised practice, and nine hours of additional CLE. *Id.* at 55-56, 799 S.E.2d at 132-33. This Court explained its reasoning for the sanctions as follows:

> Cooke's defrauding of the State through overbilling, gross mishandling of a client matter and funds, his dereliction of duty to his infant clients as a guardian ad litem—all of which is compounded by his unrelenting pattern of unresponsiveness and empty reassurances of remediation—plainly justify this degree of discipline.

*Id.* at 55, 799 S.E.2d at 132.

In another recent decision by this Court, *Lawyer Disciplinary Board v. Grindo*, 243 W. Va. 130, 142, 842 S.E.2d 683, 695 (2020), we once again issued a two-year suspension as the sanction in an overbilling matter. In *Grindo* we found no mitigating factors, but we did find numerous aggravating factors including a prior disciplinary proceeding, substantial experience in the practice of law, a pattern of misconduct, and deceitful statements in Mr. Grindo's self-report. *Id.* at 140-41, 842 S.E.2d at 693-94. This Court reiterated that it imposed the harsher sanction because, in part, Mr. Grindo had lied to Dana Eddy, Director of the PDS, and the ODC to avoid the consequences of his actions. *Id.* at 142, 842 S.E.2d at 695.

On the other hand, in *Lawyer Disciplinary Board v. Hassan*, 241 W. Va. 298, 824 S.E.2d 224 (2019), this Court once more had the opportunity to consider the appropriate sanction for an attorney who overbills the PDS. Mr. Hassan was found to have engaged in a practice of "value billing." *Id.* at 300, 824 S.E.2d at 226-27. He entered into a conciliation agreement with the PDS. *Id.* at 301, 825 S.E.2d at 227. Eventually, the ODC filed a complaint and he was found to have violated several Rules of Professional Conduct regarding his billing practices. *Id.* The HPS found mitigating factors including lack of disciplinary history, remorse, and good character in the local community; however, there were also aggravating factors including substantial experience in the practice of law and receipt of financial benefit. *Id.* at 304-05, 824 S.E.2d at 230-31. This Court explained that Mr. Hassan's conduct was not as aggravated as the attorney in the *Cooke* case. *Id.* at 305-06, 824 S.E.2d at 231-32. However, Mr. Hassan's conduct was not completely mitigated

17

either. *Id.* at 306, 824 S.E.2d at 232. Accordingly, this Court decided that "we must craft a punishment proportionate to the underlying conduct[,]" and that "[u]pon consideration of this Court's precedent, along with the mitigating and aggravating factors present[,]" "a suspension of six months is adequate discipline." *Id.*

Consequently, the sanctions *generally*[13] range from a six-month suspension to a two-year suspension for cases involving overbilling the PDS. As discussed above, the parties below initially agreed to a ninety-day suspension. However, the HPS found that to be inadequate and recommended a 180-day suspension instead. The LDB argues that the 180-day suspension is appropriate because this case is most similar to *Hassan* when compared to the other recent overbilling matters. Upon consideration of the particular circumstances in this case—including the undisputed fact that Mr. Cain had previously been informed by a circuit court judge that his bills were improper, and that Mr. Cain waited until that judge left the bench to resume submitting his bills—and the mitigating and aggravating factors present in this matter, we find that the requested ninety-day suspension is not adequate. Instead, we agree with the HPS that the 180-day suspension is an appropriate sanction. In the present matter, Mr. Cain not only admitted that he

---

[13] There have been a limited number of matters that fall outside of this suggested range. For example, in *Lawyer Disciplinary Board v. Morgan*, 243 W. Va. 627, 649, 849 S.E.2d 627, 649 (2020), this Court ordered an attorney's license to practice law be annulled. However, while Mr. Morgan's conduct included overbilling the PDS, his actions comprised over 130 separate violations of twelve different Rules of Professional Conduct. *Id.* at 641, 849 S.E.2d at 641. That is simply not the case here.

18

overbilled the PDS, but also that he did it intentionally and knowingly. Mr. Cain admitted he billed for time waiting for court that he did not actually wait; billed for in-court time that did not actually occur; billed for an excessive number of copies; billed for non-billable administrative tasks; and overbilled for post-sentencing matters, copying, jail visits, travel to the jail facility, hearings, and duplicate travel. Given this inappropriate and serious conduct, we agree that a 180-day suspension is adequate. Furthermore, we order Mr. Cain to complete an additional six hours of law practice management CLE as a condition of his reinstatement.

## IV.

## CONCLUSION

For the reasons stated herein, we impose the following sanctions according to Rule 3.15 of the Rules of Disciplinary Procedure:

(1) Mr. Cain is suspended from the practice of law for a period of 180 days.[14]

(2) Mr. Cain shall comply with the provisions of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure regarding the duties of a suspended lawyer.

(3) Mr. Cain shall pay the costs of this disciplinary proceeding.

(4) Mr. Cain shall remain compliant with the monitoring agreement he entered with WVJLAP on December 2, 2020.

---

[14] Due to the length of Mr. Cain's suspension, he must petition for reinstatement to the practice of law in accordance with the provisions of Rule 3.32 of the West Virginia Rules of Disciplinary Procedure.

(5) Prior to filing a petition for reinstatement, Mr. Cain shall complete six additional hours of CLE in the area of law practice management.

(6) If Mr. Cain should be reinstated to the practice of law, he shall be placed on two years of supervised practice by an active attorney in his geographic area in good standing. The goal of the supervised practice will be to improve the quality and effectiveness of Mr. Cain's law practice to the extent that his sanctioned behavior is not likely to recur.

Law license suspended and other sanctions imposed.

20